*343 OPINION of the Court, by
Judge Wallace.
The priacipalre&ace of the appellees, who were the *344 complain;);.is in the court below, seems to be on a bond given by tire appellant Thomas Kennedy, dated August 9th 1785, to Joseph Davis, the condition c.f which need only be recited, to v it: “ The condition of the above obligation is such, that whereas the above bound Kennedy and above na.oud Davis have had a suit in law, for a certain tract of land lying on the east fork of Paint Lick creek, part of a survey of 940 acres, made by John Kennedv, and now the said Thomas Kennedy and Joseph Davis have agreed dn the following terms, to wit, the above bound Kennedy agrees that the said Joseph Davis shall begin at the northwest corner of the old survey, and run with the old lines to the southwest corner, and then the said Kenned}' is to run the land off up the creek, binding on the old lines, three times the length of this first line, should there prove to be no offset in none of the lines; but should diere be an offset, then the said Kennedy is to lay it ofl three times the width of the land m the widest place, running up the creek from this first line for quantity ; and the said Kennedy is to make the said Davis a firm title to whatever land these lines take out of the said Kennedy’s land : then this obligation to be void and of none effect, otherwise to remain in full force and virtue. Witness my hand and seal.”
„ ,,An °⅜⅛¾ nor be per-Untied rr> avai] lumfeif ¾;" ¾ uncertainty ⅛ iJtf boundaries of the ianu ;!e Contraas t„ Convey, ⅛ 3S t0 avoid a ipecific performance, but the court decree a cnnveyance according to the best lights ■>⅜⅛ fhe cir~ cum/iances ape fcrd.
_ A defendant disclaiming any ínteres!: as heir and no interest appearing to be verted in him, he ought ⅞ have his coih as having been improperly made a party.
The appellees claim as devisees of Joseph Davis, deceits;-'1, the obligee named in this bond, and have introduced into their bill of complaint a narration or statr-siient relative to a contract for 940 acres of land abudt d to in the condition just recited, which was en-te iM lato about the middle of March Í779, between John Kennedy, since deceased, a brother of the appellants, and the said Joseph Davis; and also of several sub-.equent transactions respecting that contract, which sec.m not only intended to explain their case and illustrate its equity, but to induce a decree for a larger quantity of ¡and than the condition of the bond will justify. As it is evident from this condition that it was founded on a compromise, the narration, as far as it is supported by proof, ought to be regarded as ex- ■ planatory of any obscure expressions it contains ; anda it does not appear that the court below has given it anyT other effect. It is clearly provea that about the time.last mentioned John Kennedy did sell to Joseph Davis, *345 fora vaitnhle consideration which he received, 940 acrt-⅛ of land on the east fork of Paint Lick cfeek, which had been previously surveyed for Kennedy, under an order of Richard Henderson and company, the supposed proprietors, and which, was then styled the Walnut Meadows, or the Walnut Meadows Tract ; and that the body of the tract and some ol its lines were then shewn to Davis by Kennedy, who engaged that he would forever warrant and defend the priority and right unto Joseph Davis and his heirs forever, against all manner of claims whatsoever ; but Davis was to pay the expence of the patent.
It is not explained by the record in this suit how Henderson and company acquired a claim to this land as proprietors ; nor does it seem material to the decision, to ascertain whether the survey which had been made for John Kennedy was or was not authorised by iaw. It certainly was a sufficient ground of equity for the suit which was compromised, that he sold it to Joseph Davis with what maybe styled a general warranty. It may not however be improper to observe, that the legislature of Virginia, subsequent to this sale, at their May session 1779, passed an act for adjusting and settling the titles of claimants to unpatented lands, by which commissioners were directed to be appointed to adjust all such claims ; and fry the same act a number of surveys which had been made'were declared to be null and void, and it is believed by the court, and seems by implication to be admitted by Thomas Kennedy, that the survey which has been mentioned was one of that number. On December 20th 1779, a certain John Tate obtained from these commissioners a certificate for a settlement of 400 acres, and a pre-emption adjoining thereto of 1000 acres, containing a location for the settlement, which Comprehended a considerable part of the 940 acre survey. This certificate John Kennedy procured to be assigned to himself, whether for the purpose of aiding him to fulfill or new model his conn act with Joseph Davis, must be inferred from, his subsequent conduct. On the 14th of January 1780, and before he had recorded his certificate and entered his settlement with the surveyor, and consequently before he could have sent for a pre-emption warrant, he applied to Joseph Davis (then sick) and offered him a *346 writing purporting to be an assignment of 940 aeres of the pre-emption, which Davis declined to accept, because he Wished to get the land he had purchased, and would not take in its stead only the. chance of acquiring an equal quantity of other land. But on Kennedy’s promising before witnesses that he would secure to Davis the 940 acres he had sold him, by any writing that some gentlemen who were named should judge to be proper, Davis then paid him part of the purchase money, for which he held his obligation. This promise, however, was not complied with by Kennedy before his decease, (which happened about a year after-wards) and Alexander Collier, who was present, deposes, that Davis then also gave up to Kennedy some instrument of writing, which it is probable was an obligation fpr the land. Joseph Davis, it may be presumed, being doubtful how far his contract might be affected by the writing which he had suffered to be left with him, or supposing that the pre-emption might be so located as to include the 940 acres he had purchased, on the 29th May 1800, made an entry on a common treasury warrant of 1000 acres, to include the @40 acres, in which there seems to be an allusion to the pre-emption Kennedy had offered him ; and this entry was rendered more explicit on the 2d of February 1734; but there is no proof, nor is it reasonable to presume, that Davis ever intermeddled any farther with this pre-emption. But finding that the said settlement was so located or surveyed as to interfere with his purchase ar,d entry, on the 24th of February 1784 he commenced ?, suit in chancery, in the .late supreme court for the district of Kentucky, against Thomas and Joseph Kennedy, as heirs and legatees of John Kennedy .-deceased, to enforce his original contract; and this must be the suit which is alluded to in the condition of the bond now wader consideration, and the meaning of all the other clauses thereof are also satisfactorily explained by the preceding statements or recitals.
The appellant Joseph Kennedy; denies in his answer that he has any claini to the land in contest; and there-, fore as to him the present suit ought to have been dis-| missed with costs by the court below. But the origiaff' contract with John Kiennedy seems to have been ma ~ and fulfilled with good faith by J oseph Davis, and i ' *347 his estate descended to Thomas Kennedy as his heir at taw, he became bound by every obligation of justice and conscience to fulfil his part of that contract, and •loublv bound to comply with the compromise made by himself ; and as it does not appear, nor is even alleged that the bond was obtained by fraud or given by mistake,, it is the duty of the court to compel performance, at least to the full extent of the terms it specifies; and the only real difficulty in accomplishing this purpose, is to ascertain the boundaries of the old survey of 946 acres- But it was undoubtedly incumbent on John Kennedy, whilst he was alive, and after his death on Thomas Kennedy, his heir at law, to shew them. It is not improbable that John Kennedy left a copy of the survey amongst his papers, or that it might have been procured from the books of Henderson and Co. or that at an tad’ w dav information how to find the boundaries might have been obtained by Thomas Kennedy from, some of those who assisted in making the survey or wme conversant in its vieinity. Indeed. Thomas Kennedy only luv'-ii in his answer that he never had any personal knowledge of these boundaries, but he does not deny that 1 e had received such information as by using ¿re ciiftgence would have enabled him to find them 5 and from the deposition of Samuel Lackey it "is rather presumable chat he h,ad found them: or, to say the least, it must be considered as fraudulent in him to enter into a compromise, without knowing that it was in his power to accomplish what he undertook to do. And die allegation in his answer, that he has frequently called or. Joseph Davis and his devisees to shew any of the lines, can only evince that he always hoped to avail himself of their ignorance and lack of testimony in the case ; which was the more unreasonable, because some cf those devisees were minors, at the death of their de-visor, and continued to be so lor a considerable length of time afterwards.
These considerations, it is conceived, will authorise a ■court of justice to rely on the best circumstantial evidence the appellees have been able to adduce, to effectuate a right which otherwise, must be lost ; and if the appellant Thomas Kennedy should in any degree be injured thereby, it will be entirely through his own default • for it is not strange that after the lapse of thirty *348 years, and extensive improvements have been made ⅛ the vicinity, that some of the lines of the survey should have beers obliterated or become so obscure as that they cannot be found. But the northwest and southwest corners are satisfactorily proven, also that the lines were intended to be run to the cardinal points, and that the survey was extended in a long square (as it was expressed by John Kennedy) to the eastward, up the east fork of Paint Lick creek, so as to comprehend the remarkable fine land which lies contiguous to the creek in that direction. Moreover, the presumption is violent, that to include the watercourse was another principal object in directing the survey; and it is made evident by the exhibits that those purposes would not have been attained without making an offset in the southern boundary, equal at least to those delineated by the surveyor in the southern boundary of the survey made for Joseph Davis. It is indeed urged that this survey was not made conformably to that part of the 940 acre survey which lay to the westward of Thomas Kennedy’s settlement survey ; and it is true that alt doubts on this .point have not been entirely removed ; yet the deposition of John Davis, who assisted in making the greater part of this survey, taken in connection with those of Samuel Lackey and James Anderson, renders it highly probable that the variation, if any, was very small. Oh this probability, as well as the other considerations which have been mentioned, the court below nvist have founded their decree against Thomas Kennedy, oí which this courtis of opinion he has no right to complain : for even then the appellees will fall short of the quantity of land originally contracted lor by Joseph Davis, their devisor, between 30 and 5Q acres, which, if the compromise had not heen made, it is evident he would have been decreed to convey or to pay for.
Wherefore it is decreed'and qrdered that the decree of the circuit court for the county of Madison be reversed, «o far as it relates to the appellant Joseph Kennedy, and that he recover of the appellees his costs in this court expended ; and it is farther decreed and ordered that the said suit be remanded to the said court, that it may dismiss the same as to the said Joseph Kennedy» and decree to him his fosts expended in that court,
*349 And It is farther decreed and ordered that the said decree be affirmed, so far as it reíales to the appdhut Thomas Kennedy ,* and that the appellees do recover of him their costs in this court expended : and moreover that the said court do decree and order in the case whatever else law or equity may require to be done.